

**NUMBER 13-18-00677-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF D.R.P and H.I.P., CHILDREN

### On appeal from the 267th District Court
### of De Witt County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Hinojosa**
**Memorandum Opinion by Justice Longoria**

This appeal concerns an order terminating appellant J.R.'s (Mother) parental rights to D.R.P. and H.I.P., her children.[1]  By one issue, Mother challenges the trial court's finding that termination is in the children's best interest.  We affirm in part and reverse and render in part.

---

[1] Pursuant to rule of appellate procedure 9.8, we will utilize aliases throughout this opinion.  *See* TEX. R. APP. P. 9.8 (Protection of Minor's Identity in Parental–Rights Termination Cases and Juvenile Court Cases).

## I. BACKGROUND

The Texas Department of Family and Protective Services (the Department) first became involved with Mother in August 2016, when Mother attempted suicide by overdose with her children asleep in the same room as her. In August 2017, the Department filed its original petition to terminate Mother's and D.P.'s (Father)[2] rights to D.R.P. and H.I.P., who were eight and five years old respectively.

The affidavit in support of emergency removal alleged that Mother attempted suicide by overdose in front of her children, used a prescription drug not prescribed to the children to make them sleep, tested positive for cocaine, and admitted that she took her son's prescribed medications and smoked crack cocaine. The affidavit further recounted additional failed drug tests between August 2016 and August 2017, wherein Mother tested positive for cocaine and methamphetamines. During the same timeframe, the Department offered Mother Family Based Safety Services to help avoid the children's removal from her care. Mother, according to her caseworker, avoided the Department and had to be located by law enforcement.

On the same day as the petition was filed, D.R.P. and H.I.P. were removed from Mother's care by court order. The Department alleged that Mother: (1) voluntarily left the children alone or in the possession of another without providing adequate support of the children and remained away for a period of at least six months; (2) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; (3) engaged in conduct or knowingly

---

[2] In the same termination order, the trial court also terminated the parental rights of the children's father. Father signed an affidavit of voluntary relinquishment of parental rights to the Department and is not a party to this appeal.

placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; (4) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by chapter 161 of the Texas Family Code; (5) constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department for not less than six months and: (a) the Department has made reasonable efforts to return the children to Mother; (b) Mother has not regularly visited or maintained significant contact with the children; and (c) Mother has demonstrated an inability to provide the children with a safe environment; (6) failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from Mother under chapter 262 of the Texas Family Code for the abuse or neglect of the children; and (7) used a controlled substance, as defined by chapter 481 of the Texas Health and Safety Code, in a manner that endangered the health or safety of the children, and (a) failed to complete a court-ordered substance abuse treatment program; or (b) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(C), (D), (E), (K), (N), (O), (P) (West, Westlaw through 2017 1st C.S.).

In September 2017, the Department prepared a family service plan for Mother, which she acknowledged and signed. The trial court adopted the service plan and ordered that Mother comply with its provisions. At that point, the Department's permanency goal was "family reunification." The service plan required Mother to, among

3

other things, attend substance abuse treatment, have negative drug tests, seek treatment for her depression, complete a psychological evaluation, attend supervised visitation with the children, meet with her caseworker monthly, attend life skills courses, and attend substance abuse group classes.

A termination hearing was held on November 29, 2018. The Department offered testimony from Jessica Morales, Mother's caseworker from August 2017 until May 2018, that Mother had minimally completed some of the tasks required in the service plan and that Mother was inconsistent in her participation. Morales further testified that Mother's mental health was the most important task that needed to be addressed in the service plan, but that as of her last visit with Mother, Mother had made no progress in regard to the mental health tasks set forth in the service plan.

Kendra Leazer, Mother's caseworker from June 2018 until the time of the termination hearing, testified that a year after the service plan was put into place, the trial court found that Mother had been in minimal compliance with her service plan. Leazer explained that Mother was "not fully engaged in everything" and did not have certificates of completion for a substantial amount of the tasks in the service plan. Leazer further stated that Mother was still not in full compliance as of the date of the termination hearing. Leazer's opinion was that it "didn't appear that [Mother was] taking anything serious." Mother's employment and living arrangements were not stable and she did not complete most of the services required for reunification. Leazer testified that her opinion was that it was in the best interest of the children to terminate Mother's parental rights.

Hannah Hayward, a counselor at the Reclamation Counseling Center, testified that she began seeing Mother for counseling in April 2018. Prior to Mother's attendance at

the counseling center, Mother had tested positive for methamphetamines and cocaine. As part of her counseling, Hayward developed a treatment plan for Mother, which included goals to maintain sobriety and prevent relapse. Mother also has a goal to obtain her GED but had not done so at the time of the termination hearing. Hayward testified that as of the date of the termination hearing, she believed Mother had a reduced concern for substance abuse and she was beginning to show signs of stability. Hayward explained that Mother seemed to be doing well with the drug counseling and that Mother understands that she needs to become stable long-term. Hayward stated that she found that Mother was being compliant with the counseling treatment plan, but that she had missed some classes. Hayward also explained that Mother needed additional time and skills before she would be able to provide the proper care for her children, but that as of that day, she would not be able to provide the proper care. Hayward maintained that she believed Mother was on the right path and would reach stability. Hayward explained that Mother is on the right track to stable employment and housing but understands that she needs to continue her progress in order to become a fit parent. In working with Mother, Hayward explained that they've discussed Mother's potential option of moving into the Perpetual Help Home shelter to aid her as she continues her progress toward stability but noted that Mother was currently stable in her residence at the time of the hearing.

Hayward indicated that Mother follows the recommendations of the program and does the work required of her, though at times she has some issues reading and understanding the materials. Part of the process is to discuss the prior bad choices made by Mother and how she got into the situation she is in. Hayward explained that Mother has taken responsibility for her actions and understands how her actions have affected

her children.  During their sessions, Mother became more aware of her failings.  According to Hayward, Mother would benefit from additional time to develop better parenting skills and that with those skills, she would be able to care for her children again.

On cross-examination, Hayward agreed that Mother had not completed her program, nor had she complied with the court-ordered services.  Hayward, however, explained that since Mother had become sober, she had been focused on her responsibilities.  Hayward agreed that as of the time of the hearing, Mother was not fit to care for the children, but she did believe that it would be possible in the future.

Janet Lott, a court appointed special advocate (CASA) volunteer, was also called to testify.  Lott's role in the case began in February 2018.  Lott testified that she had attended two family visits, visited the children's foster home twice, and visited the children at school.  Lott stated that the children seemed to be bonded to Mother and that Mother seemed affectionate and caring toward the children.  During one of the visits, Mother and Father both attended and brought food for the children and toys for them to use during the visit.  Lott testified that the children appeared to be doing very well in their foster home, but like most children who go through foster care, there are some ups and downs.  Lott said that both children told her that they wished to live with their mother.  Lott explained that, as a CASA volunteer, she is an advocate for the children and based on her experience with these children and Mother, she does not believe it is in the best interest of the children for Mother's rights to be terminated; but she does not believe it is best for the children to be returned to Mother at this time.  Lott testified that it would likely upset the children if Mother's rights were to be terminated because they "love their mother, and they want to live with their mother."  Lott cannot be certain that there will "ever be" a time

when it would be suitable for the children to return home to Mother's care, but she believes Mother is trying to change her situation.

Mother also testified at the termination hearing. In her testimony, Mother admitted that she had attempted suicide in the same room as her sleeping children and has struggled with drug addiction in the past. She admitted that she had previously given the children clonidine, a medication for high blood pressure not prescribed to the children, to put them to sleep. Mother did not refute that she was unable to complete her family service plan. She explained that at the beginning of the case, she did not fully grasp the severity of the situation, but because she is sober now, she has been able to begin working on her service plan. At the time of the termination hearing, she testified that she had been sober for five-or-six-months, she was employed at a 7-Eleven, and she had her own apartment. She understands that her behaviors in the past have caused her children damage, but she believes she can change that going forward. As part of her development, she had been advised to stay away from a man that she had been previously dating, who also was an admitted drug addict. Mother testified she is no longer dating him but, she does rely on him for transportation. While she has made some progress on her service plan, she testified that she has not completed most of it. She believes that given more time, she can develop her skills to become a better parent, and she is committed to doing so. She testified that she understands she needs to comply with the service plan and she will follow the rules. She explained that her "mind wasn't straight" previously and that is why she was not compliant with her service plan. She stated that her children are doing well in foster care and testified that she needs to get better before her children can be returned to her but that at the time of the termination

hearing, it was not in their best interest to be returned to her.

On December 7, 2018, the trial court entered an order terminating Mother's rights. In its order, the trial court stated the following with respect to Mother's parental rights:

> The Court finds by clear and convincing evidence that termination of the parent-child relationship between [Mother] and the children subject of this suit is in the children's best interest.

> Further, the Court finds by clear and convincing evidence that Mother has:

>> knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

>> engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

>> failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

This appeal ensued.

## II.    BEST INTEREST OF THE CHILDREN

By her sole issue, Mother challenges the trial court's finding that termination was in the best interest of the children.

## A.    Standard of Review

Under Texas law, the parent-child relationship may be terminated upon a finding supported by clear and convincing evidence that the parent engaged in certain conduct specified in section 161.001 and termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(1)-(2); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Both elements must be established; termination may not be based solely on the best interest of the child as

8

determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). A best-interest analysis may be based on direct evidence, circumstantial evidence, subjective factors, and the totality of evidence. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.); *see In re S.H.A.*, 728 S.W.2d 73, 86–87 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *see also In re J.K.K.B.*, No. 13-13-00309-CV, 2013 WL 5970419, at *3 (Tex. App.—Corpus Christi Oct. 31, 2013, no pet.) (mem. op). We review the sufficiency of the evidence to support the termination of parental rights under the well-established standards for legal and factual sufficiency of the evidence. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

In reviewing the legal sufficiency of the evidence supporting termination of parental rights, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could have done so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id*. However, we must also consider undisputed evidence, if any, that does not support the finding. *Id*. at 86.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings and not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact finder could reasonably form a firm conviction or belief that termination of the parent-child relationship would be in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(2); *In re C.H.*, 89 S.W.3d at 26. The evidence is factually insufficient if the

9

disputed evidence that a reasonable fact finder would not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction in the truth of its finding. *In re H.R.M.*, 209 S.W.3d at 108.

## B. Applicable Law

A determination of best interest necessitates a focus on the child, not the parent. *See In re R.F.*, 115 S.W.3d 804, 812 (Tex. App.—Dallas 2003, no pet.). There is a strong presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131(b) (West, Westlaw through 2017 1st C.S.); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Department carries the burden of rebutting that presumption. *See In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The fact finder may consider a number of factors in determining the best interest of the child, including the following: the desires of the child, the present and future physical and emotional needs of the child, the present and future emotional and physical danger to the child, the parental abilities of the person seeking custody, programs available to assist those persons in promoting the best interest of the child, plans for the child by those individuals or by the agency seeking custody, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive, and there is no requirement that the Department prove all factors as a condition precedent to termination. *In re C.H.*, 89 S.W.3d at 27. In some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *Id*.

Because of the importance of parental rights, and the severity and permanency of

10

termination, the quantum of proof required in a termination proceeding is elevated from a preponderance of the evidence to clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 475, 747 (1982); *accord Holick v. Smith*, 685 S.W.2d 18, 20–21 (Tex. 1985); *see In re M.S., E.S., D.S., S.S., and N.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *In re D.S.P. and H.R.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.) (cases recognizing that involuntary termination of parental rights is a drastic remedy which divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent). "Clear and convincing evidence" means the measure or degree of proof that "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2017 1st C.S.); *see In re J.F.C.*, 96 S.W.3d at 263.

**C.      Analysis**

With regard to the children's desires, testimony provided that the children loved and missed their mother, and both wished to return home with her. When asked by the CASA volunteer about their desires, H.I.P. stated "Tell the judge that I really, really, really want to live with my mom, that [D.H.P] and I really, really, really want to live with my mom, and tell him that we're doing good" and D.H.P. said "Tell [the judge] that I, I really want to live with my mom because I love her." The statements of the children clearly weigh against a finding that termination is in their best interest. *See Yonko v. Dep't of Family & Protective Services*, 196 S.W.3d 236, 245 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (stating that "love for a parent cannot be ignored as a reflection of the parent's ability to provide for the child's emotional needs. Where the evidence of the parent's failures is not

11

overwhelming, the desires of the child weigh against termination of parental rights.").

While the department elicited testimony that Mother had previously been an emotional and physical danger to the children due to her drug use and mental health issues, there was testimony from multiple witnesses that Mother is maintaining her sobriety and that she is addressing her mental health issues with counseling. The evidence establishes that at the time of the hearing, Mother was not fit to have her children returned to her immediately, as she had not fully complied with her service plan; however, most of the witnesses testified and agreed that Mother was showing signs of improvement and stability, and given more time, she would likely be able to have her children returned to her. Evidence that a person has recently improved her life weighs against a finding that termination is in the best interest of the child. *In re K.C.M.*, 4 S.W.3d 392, 396–99 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

The Department offered evidence that at the time of removal, D.R.P. was suffering from depression, social problems, and a behavioral bowel issue, and that H.I.P. had anger and weight issues. The Department further elicited testimony that these issues have improved during the time the children have been in foster care. However, the evidence is lacking in any particulars that would show how or why termination of Mother's parental rights would improve the outlook for the children's needs. The Department's evidence consisted of the children's prior situation and their improvements during their time in foster care; however, the Department did not present evidence that Mother would be incapable of meeting her children's needs in the future. While the children have been in foster care, Mother has participated in visits with her children, provided toys and food, and displayed affection for her children.

12

The Department's initial goal was reunification between the children and Mother. At the time of the hearing, the evidence showed that Mother was working, maintaining sobriety, attending counseling and parenting courses, and had her own stable home. While it is not in dispute that Mother had not completed her courses as of the time of the hearing, there was no evidence to suggest that she was not working toward that goal. Additionally, there was testimony regarding additional programs and options like the Perpetual Help Home, that could provide additional parenting skills, shelter options, and counseling. Mother's counselor, Hannah Fisher, testified that she and Mother discussed additional programs and Mother was committed to continuing to work toward her goals.

The Department elicited testimony that the children would be available for adoption by their current foster family, though there was no indication that the foster family would adopt them. There is also a potential relative adoption, but the Department had not yet conducted home studies to determine if the relatives would be appropriate. There was no specific adoption plan in place for the children should Mother's rights be terminated. Mother testified that she would need more time to prepare for reunification with her children, that she wanted to continue to "get better" for her children. At the time of the hearing, Mother had own apartment and was employed, but she admitted she needed additional time to become more stable for a positive environment for her children.

The Department emphasizes Mother's failure to complete the Department's service plan for reunification. Mother accepted responsibility for her inability to complete the service plan and admits that at the time of removal, she was not in the right mind set. The trial court heard evidence that there has been a positive change in Mother's behavior and willingness to complete her service plan. *See In re M.G.D.*, 108 S.W.3d 508, 514

13

(Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that not all evidence of recent changes in behavior should be indicative of insufficient evidence to terminate, "[i]nstead, evidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue."). During the last four to six months of the fifteen months from removal to termination, Mother began to improve her behavior and attend counseling for her drug use, mental stability, and domestic violence. She also began to improve her life skills and parenting skills.

Termination "'can never be justified without the most solid and substantial reasons.'" *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976) (quoting *State v. Deaton*, 93 Tex. 243, 54 S.W. 901, 903 (1900)). We deem the evidence legally insufficient to allow a reasonable trier of fact to form a firm belief or conviction, based on clear and convincing evidence, that termination of Mother's rights was in the best interest of the children.[3] *In re N.L.D.*, 412 S.W.3d 810, 824 (Tex. App.—Texarkana 2013, no pet.). We sustain Mother's sole issue.

### III.   CONCLUSION

After reviewing all the evidence in the record, we conclude the Department did not meet its burden to establish by clear and convincing evidence that termination of Mother's parental rights is in the children's best interest. Therefore, we reverse that portion of the trial court's judgment terminating Mother's parental rights and render judgment denying the Department's petition for termination of Mother's parental rights. We affirm that portion of the trial court's judgment terminating the children's father's parental rights.

---

[3] Because our finding that the evidence is legally insufficient is dispositive, we need not address factual sufficiency. *See* TEX. R. APP. P. 47.1.

14

Mother did not challenge the Department's Family Code section 153.131 conservatorship on appeal, therefore, we affirm the trial court's appointment of the Department as the managing conservator of the child pursuant to section 153.131. *See In re R.S.D.*, 446 S.W.3d 816, 822–23 (Tex. App.—San Antonio 2014, no pet.) (citing *In re J.A.J.*, 243 S.W.3d 611, 617 (Tex. 2007) (explaining procedure to be followed by a parent, the Department, and the trial court when a judgment terminating parental rights is reversed by the court of appeals but the Department's conservatorship pursuant to section 153.131 is affirmed)).

NORA L. LONGORIA
Justice

Delivered and filed the
4th day of April, 2019.